IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| John R. Mayhew, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Civil Action No.: 2:11-03226-PMD |
| v. ) | |
| ) | |
| ILA Local 1771 (Clerks & Checkers), ) | **ORDER** |
| South Carolina Stevedores Association, ) | |
| Ceres Marine Terminals, APM Terminals, ) | |
| Ports America Stevedoring Contract Co., ) | |
| SSA/Cooper Stevedoring Co., and ) | |
| Charleston Gate, LLC, ) | |
| ) | |
| Defendants. ) | |
| _____) | |

This matter is before the Court upon two separate motions to dismiss pursuant to Fed. R. Civ. P. 12(b)(6). Both the first motion, filed by Defendant ILA Local 1771 ("Local 1771"), and the second motion, filed by Defendants South Carolina Stevedores Association ("SCSA"), Ceres Marine Terminals, APM Terminals, Ports America Stevedoring Contract Co., SSA/Cooper Stevedoring Co., and Charleston Gate, LLC, (collectively, "Defendants") request dismissal of Plaintiff's complaint based upon the applicable statute of limitations. For the reasons set forth below, the Court denies Defendants' motions to dismiss. However, the Court finds that Plaintiff has failed to allege a hybrid claim for which relief can be granted and hereby gives notice of its intention to enter an Order dismissing *sua sponte*.

# BACKGROUND

## I. Facts

Plaintiff John Mayhew ("Mayhew") is a member of the International Longshoremen's Association ("ILA") and its local organization, Local 1771. Local 1771 operates an exclusive[1] hiring hall through which all persons desiring to be employed as union Clerks and Checkers at the South Carolina State Port Authority ("SCSPA") must be employed. The terms and conditions of his employment are governed by a multi-employer collective bargaining agreement ("CBA" or "Master Contract"). The CBA contains many job classifications to be performed by union members. Relevant here, is the job of "TIR men" or gate workers who provide paperwork to commercial truckers to facilitate the movement of containerized cargo. Historically, location/yardwork men were hired along with these TIR men to assist with the work. Several years ago, Local 1771 provided the SCSPA with a special accommodation that permitted the SCSPA (instead of Local 1771 members) to perform the TIR function for small bulk line containers. However, in June, 2010, Local 1771 entered into an agreement (hereinafter "June Agreement") with ILA employers and the SCSA that restored the job of TIR men to members of Local 1771, creating forty-two job positions for union members.

Mayhew states that on or about January 16, 2011, he learned of this June Agreement. However, he alleges that as a result, 10 to 15 location/yardwork jobs were not transferred back to Local 1771 members as required by the Master Contract. Instead, the agreement allowed the employers to form a separate company comprised of non-union bargaining units to perform these jobs that were traditionally assigned to union members. Mayhew filed a written grievance with

---

[1] "Hiring is deemed to be exclusive, if the union retains sole authority to supply workers to the employer up to a designated percentage of the work force or for some specified period of time, such as 28 to 48 hours, before the employer can hire on his own." *Breininger v. Sheet Metal Workers Intern. Ass'n Local Union No. 6*, 493 U.S. 67, 71 n.1 (1989).

his union on January 21, 2011 about the illegal loss of these jobs. A week later, he requested copies of all CBAs between his union and employers that had an effect on his employment opportunities. On February 9, 2011, Mayhew filed an unfair labor practice claim with the National Labor Relations Board ("NLRB") against the union, alleging that Local 1771 had "failed to properly represent members by entering into agreements with [Management] that had not been approved or ratified by the members." *See* Exh.4, attached to Def. Local 1771's Mot. Dismiss. Then, on February 24, 2011, Plaintiff received a letter from Local 1771 denying his grievance after careful consideration. Thereafter, Plaintiff contacted the NLRB to assist him in obtaining copies of all documents that may have an impact on his employment opportunities. On March 24, 2011, the NLRB sent him copies of Local 1771's Constitution and Bylaws, as well as a copy of the June Agreement. The June Agreement references another agreement to be made between Defendants, so Plaintiff subsequently requested it as well. The NLRB denied this request and told Plaintiff that the agreement was still a "work in progress." On April 26, 2011, the NLRB dismissed Plaintiff's unfair labor charge on the ground that it lacked jurisdiction over internal union procedures. Additionally, the NLRB found that the union did not act in an "arbitrary or capricious manner" in providing the documents requested by Plaintiff. Finally, on May 31, 2011 Plaintiff filed a formal grievance with the Local Industry Grievance Committee (LIGI), as required by Article XIII, Section 1 of the Master Contract, titled "Grievance Procedure."[2] To date, Plaintiff states that he has not received a response. On June 27, 2011, Mayhew re-filed his grievance with Local 1771, asking them to reverse their February 24, 2011 decision, but Local 1771 did not respond.

---

[2] Section 1 states: "All disputes under this Master Contract involving containerization and ro-ro, including interpretations of this Master Contract, shall be heard initially by the Local Industry Grievance Committee ("LIGC") …." Pl.'s Memo in Opp. to Employer Defs. 4.

**II. Nature of the Case**

On November 28, 2011, Mayhew brought a "hybrid"[3] claim against both his union, Local 1771, for violation of its duty of fair representation and his employers for breach of the CBA, in violation of Section 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185. Essentially, Mayhew alleges Local 1771 breached its duty of fair representation when it entered into the June Agreement that had the effect of denying him certain jobs guaranteed by the CBA.[4] Similarly, he alleges that his employers (or "Management") breached the CBA by entering into this agreement.

In nearly identical motions to dismiss, Defendants assert a statute of limitations defense. Plaintiff then filed a responsive motion, and Defendants replied.

## STANDARD OF REVIEW

"A motion to dismiss under Rule 12(b)(6) for failure to state a claim upon which relief can be granted is a challenge to the legal sufficiency of a complaint." *F.T.C. v. Innovative Mktg., Inc.,* 654 F. Supp. 2d 378, 384 (D. Md. 2009). The Supreme Court recently held that "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009) (*citing Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 1940 (*citing Twombly*,

---

[3] "A 'hybrid claim' [is] named as such because it comprises a claim against an employer for breach of a collective bargaining agreement under Section 301 of the Labor Management Relations Act, 29 U.S.C. § 185, and simultaneously against a union for breach of the duty of fair representation." *Williams v. Internat'l Longshoremen's Ass'n, Local 333*, No. RDB-06-1943, 2007 WL 4268960, at *5 (D. Md. Nov. 30, 2007).

[4] Page 7 of the Complaint outlines eight (8) particulars in support of Plaintiff's claim, but the Court need not address the substance of each at this time.

550 U.S. at 556). "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 1950; *see also Harman v. Unisys Corp.*, No. 09-1298, 2009 WL 4506463, at *2 (4th Cir. Dec. 4, 2009). The Court added that "the tenet that a court must accept as true all of the allegations contained in the complaint is inapplicable to legal conclusions," and that "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 129 S.Ct. at 1949. The Court further noted that "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* at 1950.

Generally, on a 12(b)(6) motion a court cannot consider material outside the complaint, however, a court may consider exhibits submitted with the complaint. *Marder v. Lopez,* 450 F.3d 445, 448 (9th Cir. 2006). Additionally, "[s]tatements in a pleading may be adopted by reference in a different part of the same pleading or in another pleading or in any motion. A copy of any written instrument which is an exhibit to a pleading is a part thereof for all purposes." Fed. R. Civ. P. 10(c); *see e.g.*, *Brazell v. Windsor*, 384 S.C. 512, 514 (S.C. 2009) ("In our view, allowing a trial court to consider documents that are incorporated by reference in the complaint but not actually attached thereto prevents a plaintiff from benefiting from his own oversight or from surviving a motion to dismiss by intentionally omitting documents upon which their claims are based.").

## ANALYSIS

### A. Statute of Limitations

The statute of limitations for a hybrid claim is governed by the National Labor Relations Act, 29 U.S.C. § 160(b), which states that a plaintiff must file suit within six months of when his

cause of action accrued. *DelCostello v. Int'l Brotherhood of Teamsters*, 462 U.S. 151, 170-72 (1983). When a cause of action "accrues" is determined by federal law, but "the general rule is that a cause of action accrues when the plaintiff knows or should know that a violation of his rights has occurred." *Cox v. Stanton*, 529 F.2d 47, 50 (4th Cir. 1975). In this context, the time begins to run when the employee "obtains actual or imputed knowledge of the conduct alleged to constitute a breach of the union's duty of fair representation." *Mincey v. United States Postal Serv.*, 879 F. Supp. 567, 572 (D.S.C. 1995). Mayhew filed his complaint on November 28, 2011, so the question is whether his claim accrued within six months prior to this date, or if not, whether the limitations period was tolled.

Mayhew provides several instances whereby he claims his union breached its duty of fair representation, such as, it arbitrarily entered into the June Agreement, and denied him the right to have his grievance processed. Mayhew filed a grievance on January 21, 2011, which specifically referred to an "outside" Agreement between Defendants and stated his contention that the assignment of several jobs to non-bargaining unit employees without membership approval violated the CBA. Arguably, Mayhew had at least some knowledge of the union's conduct that allegedly violated his rights when he filed that grievance. *See Follin v. Safeway, Inc.*, 166 F.3d 332, 1998 WL 808374, at *2 (4th Cir. 1998) (finding that plaintiff was aware of the conduct that allegedly violated his rights because he filed a grievance specifically referring to that conduct). Shortly thereafter, on February 9, 2011, Mayhew also filed an unfair labor practice claim with the NLRB against the union. Several courts have concluded that a filing with the NLRB triggers the statute of limitations.[5] Then, on February 24, 2011, Local 1771 denied Plaintiff's grievance

---

[5] *See e.g.*, *Washington v. Serv. Employees Int'l Union, Local 50*, 130 F.3d 825, 826 (8th Cir. 1997); *Arriaga-Zayas v. Int'l Ladies' Garment Workers' Union*, 835 F.2d 11, 13 (1st Cir. 1987); *Devitt v. Potter*, 234 F. Supp. 2d 1034, 1042 (D. N.D. 2002).

and *unequivocally* told him that it would not assist him. As such, Mayhew certainly had discovered all acts constituting the alleged breach of the duty of fair representation by February 24, 2011. *See Williams v. Int'l Longshoremen's Ass'n, Local 333*, No. RDB-06-1943, 2007 WL 4268960, at *5 (D. Md. Nov. 30, 2007) (finding that "the statute of limitations began to run when the union member was clearly advised that his claim would not be taken further by the union"). In viewing the evidence in the light most favorable to Plaintiff, the Court finds that the action accrued for statute of limitation purposes no later than February 24, 2011. Therefore, Mayhew had until August, 24, 2011 to file a timely action. Since Mayhew's Complaint was in fact filed outside this limitations period, his claim is barred unless the statute of limitations was tolled.

**B. Tolling the Statute of Limitations**

A plaintiff bears the burden of proving that the limitations period should be tolled. *See Mincey*, 879 F. Supp. at 573 (*citing Crawford v. United States*, 796 F.2d 924, 929 (7th Cir. 1986)). Because this case deals with an alleged breach of duty arising outside the grievance process,[6] the accrual of such a claim can be tolled by a member's good faith attempt to exhaust the grievance procedures. *See e.g., Linville v. United Auto Workers of America, Local 3399*, 415 F. Supp. 2d 656, 662 (S.D. W.Va. 2006); *see also Lucas v. Mountain States Telephone & Telegraph*, 909 F.2d 419 (10th Cir. 1990). This rule is supported by the underlying policy of forestalling "judicial interference with internal union affairs." *Clayton v. Int'l Union,* 451 U.S. 679, 687 (1981). However, the Fourth Circuit has apparently adopted the position of other circuits that a court should not toll the statute of limitations unless the plaintiff formally invokes an internal union procedure. *See Follin*, 1998 WL 808374, at *2 (finding tolling inappropriate

---

[6] Although the complaint does include the union's denial of Plaintiff's right to have his grievance heard in the list of particulars for the breach, the gravamen of Plaintiff's complaint is that his union and his employer entered into an agreement in violation of the CBA.

7

because plaintiff "did not invoke any definite internal union procedure" (*citing Pantoja v. Holland Motor Express, Inc.*, 965 F.2d 323, 328-29 (7th Cir. 1992))). Therefore, Plaintiff must prove that within six months of February 24, 2011, he took action pursuant to a formal grievance procedure. *See Lee v. Cytec Indus. Inc,* 460 F.3d 673, 676 (5th Cir. 2006) (adopting the rule that a plaintiff must file a formal grievance within six months of the breach for tolling to apply).

Plaintiff argues that the case should be tolled during the time he wrote letters to his union requesting documents and sought help from the NLRB to obtain documents, all of which lasted until April 26, 2011. The Court disagrees because informal communications not pursuant to any internal union practice, such as letters to the union president, are insufficient to toll the limitations period. *See id.*; *see also Ryder v. Phillip Morris Inc.*, 946 F. Supp. 422 (E.D. Va. 1996). Additionally, the Court finds that Plaintiff's filing of an unfair labor practice claim with the NLRB is insufficient to toll the limitations period. *Kolomick v. United Steelworkers of Am., Dist. 8*, 762 F.2d 354, 356 (4th Cir. 1985) ("A rule tolling the time period within which to file a § 301 claim in federal court simply by virtue of filing a claim with the NLRB would be contrary to the rationale underlying *DelCostello* and would not effectuate congressional goals."). However, Plaintiff's claim that the case should be tolled until May 31, 2011—the date on which he filed a grievance with the LIGC—warrants closer attention.

The Supreme Court has held that

> [a]n employee seeking a remedy for an alleged breach of the collective bargaining agreement between his union and employer must attempt to exhaust any exclusive grievance and arbitration procedures established by the agreement before he may maintain a suit against his union or employer under Section 301(a) of the Labor Management Relations Act.

*Clayton*, 451 U.S. at 681. Additionally, an employee's attempt to do so must be "in reasonable good faith." *Adkins v. Int'l Union of Elec.*, 769 F.2d 330, 336 (6th Cir. 1985); *see also Hartwick*

*v. Dist. Lodge 70*, 184 F. Supp. 2d 1092, 1100 (D. Kan. 2001) ("The limitations period, however will not be tolled when the employee is inexcusably dilatory with regard to the pursuit of his or her grievance." (*citing Herrera v. Int'l Union*, 858 F. Supp. 1529, 1541 (D. Kan. 1994))). Thus, for tolling to apply Mayhew must have acted in reasonable good faith, under the circumstances of this case, in waiting until May 31, 2011 to pursue the proper grievance procedure. The Court concludes that Mayhew did act in reasonable good faith and therefore tolling is appropriate.

Mayhew was not "inexcusably dilatory" for letting three months pass before taking the proper, formal actions as mandated by the CBA. After Mayhew was informed that his union would not assist him with his grievance, he sought further assistance from the NLRB—an agency that helps protect employees and serves as an avenue for private settlement of disputes. On March 24 and March 31, 2011, the NLRB provided Mayhew with the documents he requested relating to his claim, including the June Agreement. Additionally, it was not until April 26, 2011 that Mayhew received a response from the NRLB to his February 9th charge against the union. The NLRB ultimately told Mayhew it was dismissing his claim. At this point, it was evident that Mayhew was not going to get the assistance he wanted from either his union or the NLRB. The very next month, he pursued a formal grievance by requesting a hearing with the LIGC to determine if the Defendants had entered an agreement in violation of the CBA. Notably, Mayhew was not under any time constraint under the terms of the CBA for filing a charge or requesting a hearing with the LIGC. *See Lee*, 460 F.3d at 676 ("[T]he lack of good faith is demonstrated by the fact that the grievance was not filed within the 10-day period required by the CBA."). Furthermore, one purpose of "the statute of limitations is to prevent a person who has been injured in some way from resting on his/her oars." *Ass'n of Frigidaire Model Makers v. Gen. Motors Corp.*, 710 F. Supp. 1149, 1151 (S.D. Ohio 1988). Mayhew was

9

not "resting" at all. During the time between February 24 and May 30, 2011, he was actively doing something, albeit futile or informal, to further his claim. *See Beach v. U.S. Postal Serv.*, No. 08-2362, 2009 WL 2477529, at *5 (D. Md. Aug. 11, 2009) (finding that despite the fact that Plaintiff's grievance was not the appropriate mechanism to file grievances, "such an error would not prevent the tolling of the statue of limitations"). Because Mayhew did in fact invoke a formal grievance procedure in good faith and within six months of his accrual date, the Court finds tolling appropriate. Once the LIGC failed to respond to Mayhew within 10 days of the date of his hearing request as required by the CBA, Mayhew knew he had exhausted all internal remedies available to him and his claim against the union accrued. Therefore, the Court finds that June 10, 2011—ten days after May 31, 2011—is the new accrual date, and because Mayhew filed suit within six months of that date, his action is timely.

C. **Notice of Dismissal** *Sua Sponte*

Even if the statute of limitations did not bar Mayhew's unfair representation claim, the claim should nonetheless be dismissed on the pleadings for failure to state a claim upon which relief may be granted.[7] Where the face of a complaint plainly fails to state a claim for relief, a district court has "no discretion" but to dismiss it. *See* 5A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1357 (2d ed. 1990); *see Eriline Co. v. Johnson,* 440 F.3d 648, 655 n. 10 (4th Cir. 2006) ("Where the face of a complaint plainly fails to state a claim for relief, a district court has 'no discretion' but to dismiss it."). If a court concludes that a complaint should be dismissed *sua sponte* for failure to state a claim, "the parties must be given both notice of the court's intention and an opportunity to respond." *Webb v. EPA*, 914 F.2d 1493, 1990 WL 139665, at *1 (4th Cir. Sept. 27, 1990). Although the Fourth Circuit has not

---

[7] Defendants' 12(b)(6) Motions only assert the statute of limitations as a ground for dismissal.

specifically addressed the procedural parameters in this context,[8] other circuits have provided general guidance. *See Tingler v. Marshall*, 716 F.2d 1109, 1112 (6th Cir. 1983) (requiring (1) service on defendants, (2) notice of the court's intent to dismiss, (3) the court to give plaintiff and defendant opportunity to respond, and (4) the court to state reasons for dismissal); *see also Jefferson Fourteenth Assoc. v. Wometco de Puerto Rico,* 695 F.2d 524 (11th Cir. 1983) (holding that a *sua sponte* dismissal without notice and an opportunity to respond violated a plaintiff's due process rights); *see also Lewis v. N.Y.*, 547 F.2d 4, 6 n.4 (2d Cir. 1976) ("Failure to afford plaintiffs an opportunity to address the court's *sua sponte* motion to dismiss is, by itself, grounds for reversal.").

Because the 12(b)(6) Motions filed by Defendants did not address the merits of Plaintiff's hybrid claim, the Court finds it appropriate to allow Plaintiff an opportunity to address the issue of whether his Complaint alleges a hybrid claim that entitles him to relief under the 12(b)(6) standard.

<u>Reasons for Dismissal</u>

To recover against a union under § 301, the union member must prove both "(1) that the employer breached the collective bargaining agreement and (2) that the union breached its duty of fair representation." *Vencl v. Int'l Union of Operating Eng'rs, Local 18*, 137 F.3d 420, 424 (6th Cir. 1998). Both prongs of the claim must be met and failure in one is fatal to the whole. *See Courie v. Alcoa Wheel & Forged Products*, 577 F.3d 625, 631 (6th Cir. 2009) ("Both halves are essential.").

---

[8] The Fourth Circuit has held that in the context of *sua sponte* summary judgment motions, the court must give the opposing party notice to come forward with all of his evidence and an opportunity to demonstrate a genuine issue of material fact. *Clayton v. Ozmint*, No. 2:10-00190, 2010 WL 5798740, at *2 (D.S.C. Dec. 7, 2010) (*citing Allstate Ins. Co. v. Fritz*, 452 F.3d 316, 323, (4th Cir. 2006).

1. **Union's Breach**

A union breaches its duty of fair representation when its conduct toward an employee is "arbitrary, discriminatory, or in bad faith." *Air Line Pilots v. O'Neill*, 499 U.S. 65, 67 (1991). And, it is established that this standard applies to a union in its negotiating capacity. *Id.* at 66. The Fourth Circuit has held that "the union's conduct must be 'grossly deficient' or in reckless disregard of the member's rights." *Smith v. Local 7898, United Steelworkers of Am.*, 834 F.2d 93, 96 (4th Cir. 1987) (*citing Ash v. United Parcel Serv., Inc.*, 800 F.2d 409, 411 (4th Cir. 1986) (per curiam).

Plaintiff provides eight (8) grounds in support of his position that his union breached its duty of fair representation; however, all but one relate to the union's actions in negotiating and entering into the June Agreement that allegedly had the effect of denying jobs to Plaintiff. Thus, at issue here is a negotiated agreement, not the operation of a hiring hall. Only one of the grounds for breach relates to the union's denial of Plaintiff's right to have his grievance processed, arbitrated, or properly investigated. Upon reviewing the conduct of Local 1771, the Court is mindful that "Congress did not intend judicial review of a union's performance to permit the court to substitute its own view of the proper bargain for that reached by the union." *Air Line Pilots*, 499 U.S. at 78.

a. **Arbitrary**

"[A] union's actions are arbitrary only if, in light of the factual and legal landscape at the time of the union's actions, the union's behavior is so far outside a 'wide range of reasonableness,' as to be irrational." *Id.* at 67. The Court must review the union's actions and decisions at the time the alleged breached occurred. *Id.*

Plaintiff alleges that his union breached its duty when it arbitrarily and without cause entered into the June Agreement, resulting in the loss of 10 to 15 location/yardwork jobs guaranteed to him and other Local 1771 members by the terms of the CBA. First, as noted above, prior to the June Agreement a special accommodation was provided for by Local 1771 to the SCSPA, and as a result, Local 1771 members were *not* performing the work of TIR men. Upon agreement that these jobs should be restored back to union members, Plaintiff's union and employers negotiated and entered into the June Agreement. Specifically, the ILA negotiated for the restoration of 42 TIR jobs to members of Local 1771 (TIR Clerks), which historically was a job performed by union members. The Agreement provided that the employers *will* form a TIR Gate Company and an agreement *will* be made with the ILA covering hiring practices. Mayhew contends that because location/yardwork men were also historically hired along with TIR men, and because no jobs of this type were provided to Local 1771 members in the June Agreement, the union breached its duty of representation. Mayhew also alleges that instead of transferring these jobs back to Local 1771, his union and his employers agreed to form a separate company comprised of non-union bargaining units to perform the work.

The facts, however, fail to even plausibly support Mayhew's conclusory allegations of what happened as a result of the June Agreement. The June Agreement has the effect of giving 42 jobs *back* to the union, thus enhancing benefits to union members, such as Mayhew. Mayhew does not dispute this fact. Upon examination of the Agreement, it is true that location/yardwork jobs were not given to Local 1771 members. But, this fact alone does not render the union's actions in bargaining for the restoration of 42 TIR jobs irrational or in reckless disregard of the rights of its members. Simply because the CBA states that location/yardwork men were historically hired along with TIR men does not mean the union acted arbitrarily by entering into

13

an agreement that only restored TIR jobs. Under the circumstances, whereby the ILA was renegotiating with the employers after ending the special accommodation, the Court finds that Local 1771 properly considered the interests of all whom it represents when it entered agreed to the terms of the June Agreement. *See Ekas v. Carling Nat'l Breweries*, 602 F.2d 664, (4th Cir. 1979) (finding that unions have wide discretion in negotiating over mergers and consolidations of bargaining units, as long as they do not arbitrarily ignore the interest of any group). The facts as alleged do not support the inference that Local 1771 acted in an arbitrary manner by agreeing to the terms of the June Agreement that provides more job opportunities to its members. Furthermore, the Court finds no facts to support Mayhew's conclusion that these location/yardwork jobs are in fact going to be performed by non-union members. The June Agreement only states that a Gate Company will be formed by his employers in the future and thereafter an agreement will be made with the ILA regarding hiring practices. Nowhere in the Agreement does it state that location/yardwork jobs will be performed by non-union members.

Additionally, Plaintiff's union did not breach its duty when it failed to pursue Mayhew's unmeritorious grievance. *See Teamsters, Local 315*, 217 N.L.R.B. 616, 617 (1975) (holding that "a union may refuse to process a grievance . . . for a multitude of reasons, but it may not do so without reason). Mayhew's union promptly responded to his grievance with a letter articulating the reasons for its decision not to pursue his claims. The union stated that contrary to Mayhew's belief, no jobs covered by the CBA were lost, the new Gate Operation will be run in accordance with the CBA, and the June Agreement was in fact ratified by a unanimous vote of the membership at the June 15, 2010 membership meeting that Mayhew failed to attend. Therefore, the Court finds that the union did not act in an arbitrary manner by either entering in to the June Agreement or by failing to process or arbitrate Mayhew's grievance.

### b. Discriminatory

A union "may not discriminate against any member of the union or treat some members with hostility while favoring others." *Smith*, 834 F.2d at 96. The Compliant is devoid of any allegations that his union acted in a discriminatory manner or that his union treated him in a hostile manner compared to other union members. The Court finds that based on the reasons set forth above, Plaintiff failed to set forth a claim for which relief may be granted that the union acted in a discriminatory manner towards its members when it negotiated and entered into the June Agreement. *See generally Local 644 Intern. Photographers of Motion Picture Ind. v. Internat'l Alliance of Theatrical Stage Employees*, 563 F. Supp. 1334, 1339 (D.C. N.Y. 1984) ("The duty of fair representation also requires … that the International [Union] not treat any faction or segment of its membership with hostility or discrimination in negotiating a contract.").

### c. Bad Faith

"A showing of 'bad faith requires a showing of fraudulent, deceitful, or dishonest action.'" *Sim v. New York Mailers' Union of Am., No. 6*, 166 F.3d 465, 472 (2d Cir.1999). "Honesty and good faith are demanded of [a union], but as long as there are those ingredients in its conduct, a union has broad discretion in treating competing interests of members of the bargaining unit." *Smith*, 834 F.2d at 96. Mayhew also does not allege that his union acted in bad faith. Even if Mayhew had done so, the Court finds no facts in the record to plausibly support a showing that his union acted fraudulently or dishonestly, as the facts do not establish that his union even acted arbitrarily. It is difficult to imagine how a union's decision to enter into an agreement that results in restoring 42 jobs to the members it represents could be found to be made in bad faith. *See generally*, *Lewis v. Tuscan Dairy Farms, Inc.*, 25 F.3d 1138, 1140, 1142-43 (2d Cir. 1994)(finding bad faith because union concealed from employees a secret oral

agreement sacrificing seniority rights while assuring the employees that they would receive these rights); *see also Spellacy v. Airline Pilots Ass'n – Int'l*, 156 F.3d 120, 126 (2d Cir. 1998)("A union acts in bad faith when it acts with an improper intent, purpose, or motive . . . . Bad faith encompasses fraud, dishonesty, and other intentionally misleading conduct.").

### 2. Employer's Breach

Because Mayhew cannot prevail on his claim that Local 1771 breached its duty of fair representation, his Section 301 claim against his employers must fail. *See Acosta v. Potter*, 410 F. Supp. 2d 298, 309 (S.D.N.Y 2006) (finding that "courts presented with hybrid claims need not reach the question of whether the employer violated the CBA unless the union has acted arbitrarily, in bad faith, or discriminatorily"). Therefore, the Court need not address the merits under this prong.

## **CONCLUSION**

For a claim to survive a 12(b)(6) motion to dismiss, a plaintiff must plead factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. Under the facts as alleged, Mayhew has failed to meet this burden. Therefore, the Court hereby gives notice to the parties of its intention to enter an Order dismissing *sua sponte* Plaintiff's Complaint for failure to state claim upon which relief may be granted.

For the foregoing reasons, it is hereby **ORDERED** that Defendants' motions to dismiss Plaintiff's complaint on statute of limitations grounds are **DENIED.** It is further **ORDERED** that Plaintiff respond in writing to this Court's **PROPOSED ORDER TO DISMISS SUA SPONTE** within **20 DAYS** of the date of this Order.

**AND IT IS SO ORDERED**.

_____
PATRICK MICHAEL DUFFY
United States District Judge

**April 30, 2012**
**Charleston, SC**